UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS L. PEARSON,                )
                                  )
        Plaintiff,                )
                                  )   Case No. 11-cv-0019
    v.                            )
                                  )   Judge John W. Darrah
GARRETT-EVANGELICAL               )
THEOLOGICAL SEMINARY, INC.,       )
                                  )
        Defendant.                )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Thomas L. Pearson ("Pearson"), donated money to Defendant, Garrett-Evangelical Theological Seminary, Inc. ("Garrett"), to fund a scholarship in memory of his parents. Dissatisfied with Garrett's subsequent administration of that fund, Pearson brought this action, asserting claims for breach of contract, fraudulent misrepresentation and concealment, negligent misrepresentation, breach of fiduciary duty, and unjust enrichment. Garrett moved to dismiss all claims, asserting that Pearson lacks standing to challenge the administration of the scholarship and that all five counts fail to state claim for relief.

## BACKGROUND

The following facts are taken from Pearson's Amended Complaint and exhibits attached thereto and are accepted as true for purposes of this Motion to Dismiss.[1] Pearson is a citizen and resident of Oklahoma. Garrett is an Illinois not-for-profit corporation with its principal place of business in Evanston, Illinois. The amount in controversy exceeds $75,000. Subject-matter jurisdiction is premised on diversity of citizenship.

Garrett provides graduate-level education to students training to become members of the clergy affiliated with the United Methodist Church. In 2006, Pearson pledged to make a three-installment gift of $1.2 million to Garrett for purposes of funding a scholarship program (the "Pearson Scholarship"). Equal installments of $400,000 were to be paid in 2006, 2007, and 2008 and were, in fact, paid according to that schedule. The gift was pledged in honor of Pearson's parents, Richard L. and Ramalee E. Pearson. Richard Pearson graduated from Garrett in 1953 and served as a pastoral minister for the United Methodist Church. He served in Iowa for over forty years.

Richard is now deceased, but he discussed and designed the scholarship at issue with his son before he died. As alleged in the Amended Complaint, the gift was conditioned on Garrett's ability to find bright, young scholars dedicated to pursuing ministry work in Iowa:

---

[1] The "well-settled rule" is that when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 754 (7th Cir. 2002) (citation and internal quotation marks omitted).

> The Pearson family agreed and determined that the Pearson Scholarship would only support upcoming generations of Garrett students who were among the brightest young scholars and who planned to undertake the same pastoral ministry work in Iowa to which Richard and Ramalee had dedicated their lives. Mr. Pearson's gift to Garrett contemplated that if Garrett was unable to fulfill these objectives, the scholarship funds would be moved to DePauw University in Indiana to establish a scholarship fund honoring his parents at that institution rather than at Garrett.

Am. Compl. ¶ 7. Pearson alleges that, after four years, it was clear that Garrett could not meet the conditions that accompanied Pearson's gift and that the funds should be relinquished and moved to DePauw University.

## LEGAL STANDARD

A party may move to dismiss an action for lack of standing under Federal Rule of Civil Procedure 12(b)(1). *See Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). In considering a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the district court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The plaintiff carries the burden of establishing standing. *Id.* A court ruling on a motion to dismiss under Rule 12(b)(1) may rely upon affidavits and other materials supporting its motion. *United Phosphorus Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

3

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court views the complaint's allegations in a light most favorable to the plaintiff, draws all reasonable inferences in favor of the plaintiff, and takes as true all well-pleaded facts and allegations in the complaint. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to provide the defendant with fair notice of the plaintiff's claims and the grounds upon which they rest. *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*). To survive a motion to dismiss, the plaintiff's claim must be plausible and the factual allegations of the complaint must be "enough to raise a right to relief above the speculative level." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (*Brooks*) (quoting *Twombly*, 550 U.S. at 555). The court does not need to accept as true, "legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Moreover, the court is not bound by a plaintiff's legal characterization of the facts or required to ignore facts set forth in the complaint that undermine a plaintiff's claim. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).

## ANALYSIS

Each of Pearson's five claims involves an alleged agreement between Pearson and Garrett. Both parties seem to agree that Illinois law applies to all claims at issue, although both also cite law from other jurisdictions to support their respective arguments. Additionally, the "Gift Agreement" between Pearson and Garrett, dated October 18, 2006, which is attached as Exhibit A to Pearson's Amended Complaint,

4

expressly provides that it "shall be governed by the law of Illinois." Gift Agreement ¶ 11. Illinois courts typically honor the law of the state chosen by contracting parties. *Old Republic Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 906 N.E.2d 630, 636 (Ill. App. Ct. 2009). Accordingly, the Court will apply Illinois law for purposes of resolving this motion to dismiss.

## Standing

As an initial matter, Garrett asserts that Counts I, IV, and V should be dismissed because Pearson, as a mere donor, lacks standing to challenge Garrett's administration of the Gift Agreement. Garrett supports its argument with Illinois cases holding that one does not have standing to challenge the administration of a charitable trust simply by virtue of having donated money to that trust. In *Holden Hospital Corp. v. Southern Illinois Hospital Corp.*, 174 N.E.2d 793, 796 (Ill. 1961), for example, the Illinois Supreme Court held that donors who contributed funds to a hospital's fund-raising campaign did not have standing to intervene in an action brought by the hospital to secure approval of a contract to sell its assets to another hospital. The court observed that the persons who sought to intervene claimed "no special interest in the corporation other than that arising from their unrestricted contributions made in the past." *Id.*

Similarly, in *Skokie Valley Professional Building, Inc. v. Skokie Valley Community Hospital*, 393 N.E.2d 510, 513-14 (Ill. App. Ct. 1979), an Illinois appellate court stated that "unrestricted contributions to charitable corporations do not provide donors with standing to challenge ultra vires acts of the corporation" before the court

went on to analyze the question of standing under Illinois's General Not for Profit Corporation Act. (That act has not been put at issue in this case.)

In *Smith v. Thompson*, 266 Ill. App. 165, 1932 WL 2801, at *1 (1932) (*Smith*), the mayor of Chicago organized a fund with the stated purpose of providing immediate relief for sufferers of a flood of the Mississippi River. A man who donated $50 to the fund brought suit, alleging that the mayor diverted some of the funds raised to his private and political purposes. *Id.* The appellate court held that the plaintiff lacked standing, stating as follows: "[A] mere donor to a fund creating a trust for a public charity cannot call the trustees of that fund to an account for a misapplication of the fund, or any breach of the trust, unless there is something peculiar in the transaction beyond the mere fact of contribution." *Id.* at *10.

Collectively, these cases simply stand for the proposition that donating money to a charitable fund does not confer standing to challenge the administration of that fund. In this case, however, Pearson does not merely allege that he made a donation; he alleges that he donated money pursuant to a specific agreement that was later breached. Thus, the above-cited authority from Illinois does not demonstrate that Pearson lacks standing to pursue his claims.

Garrett also relies on a decision of the Supreme Court of Connecticut: *Carl J. Herzog Foundation, Inc. v. University of Bridgeport*, 699 A.2d 995 (Conn. 1997) (*Herzog*). The facts giving rise to the dispute in that case are similar to those at hand. The plaintiff alleged that it made grants to the defendant university "to provide need-based merit scholarship aid to disadvantaged students for medical related education." *Id.*

699 A.2d at 996. After the money was transferred to the defendant, the defendant's nursing program was closed. *Id.* The plaintiff brought an action under the Connecticut Uniform Management of Institutional Funds Act ("CUMIFA"), alleging that the defendant was an "institution"; that the plaintiff's grant constituted "institutional funds"; and that a letter from the plaintiff to the defendant, which set forth restrictions and conditions of its grant, constituted a "gift instrument" as those terms are defined by the CUMIFA. *Id.* The Supreme Court of Connecticut certified an appeal to resolve one issue only: "whether the [CUMIFA] establishes statutory standing for a donor to bring an action to enforce the terms of a completed charitable gift." *Id.* The court concluded that it did not. *Id.*

In reaching that conclusion, the *Herzog* court began by analyzing "the common law landscape upon which the CUMIFA was enacted." *Id.* at 997. Citing to cases from several jurisdictions, the court stated that "a donor who has made a completed charitable contribution, whether as an absolute gift or in trust, had no standing to bring an action to enforce the terms of his or her gift or trust unless he or she had expressly reserved the right to do so." *Id.* The court also relied on the Restatement (Second) of Trusts, which states, "Where property is given to a charitable corporation and it is directed by the terms of the gift to devote the property to a particular one of its purposes, it is under a duty, *enforceable at the suit of the [a]ttorney [g]eneral*, to devote the property to that purpose." 2 Restatement (Second) Trusts § 348 (emphasis supplied in *Herzog*). The *Herzog* court reasoned that, unless the donor had retained a specific right to control the property given to the institution, such as a right of reverter, the attorney general had the

7

exclusive right to bring an action to correct abuses in the administration of the trust. *Id.* at 998. The court also quoted the Illinois Appellate Court's *Smith* decision (discussed above), stating that "neither the donor nor his heirs have any standing in court in a proceeding to compel the proper execution of the trust, except as relators." *Id.* (quoting *Smith*, 266 Ill. App. at 169).

The *Herzog* court thus concluded that the general common-law rule is that a donor who does not expressly reserve a property right in a gift does not have standing to enforce the terms of that gift. *Id.* at 999. The court then turned to the CUMIFA and determined that the Connecticut legislature did not intend to alter that rule. *Id.* at 999-1000. In particular, the court observed a comment by the drafters, stating, "The donor has no right to enforce the restriction, no interest in the fund and no power to change the eleemosynary beneficiary of the fund. He may only acquiesce in a lessening of a restriction already in effect." *Id.* at 1001 (citing Uniform Management of Institutional Funds Act, § 7, comment, 7A U.L.A. 724 (1985)). The plaintiff's "sole basis" for claiming standing in that case was the CUMIFA. *Id.* at 997.

Because Illinois also adopted the Uniform Management of Institutional Funds Act ("UMIFA"), Garrett argues that the holding in *Herzog* should control this case. (Actually, the Illinois UMIFA has been repealed and replaced by the Uniform Prudent Management of Institutional Funds Act ("UPMIFA"). Garrett asserts that the UPMIFA also did not alter the common-law principle regarding donor standing.) This argument presents at least two problems. First, unlike the plaintiff in *Herzog*, Pearson has not brought this case under the UMIFA (or the UPMIFA). Instead, Pearson asserts claims for

breach of contract and other common-law causes of action. The *Herzog* plaintiff's sole basis for standing was the CUMIFA, and the *Herzog* court's holding was expressly limited to determining whether that particular statute conferred standing on a donor.

Second, *Herzog* is not the law of Illinois; and Garrett has not identified any Illinois authority that would suggest that the Supreme Court of Illinois would apply the reasoning in *Herzog* to the facts of this case. Notably, two of the five judges in *Herzog* dissented from the majority, *see Herzog*, 699 A.2d at 1002; and Pearson notes a body of case law in New York that *does* recognize donor standing. In *Smithers v. St. Luke's-Roosevelt Hospital Center*, 723 N.Y.S.2d 426, 427 (N.Y. App. Div. 2001) (*Smithers*), the court held that the estate of a donor of a charitable gift had standing to sue the donee to enforce the terms of a gift that had been donated with restrictions. The court stated that "there is no substitute for a donor, who has a special, personal interest in the enforcement of the gift restriction" and noted that it had seen "no New York case in which a donor attempting to enforce the terms of his charitable gift was denied standing to do so." *Id.* at 434-35.

Garrett simply dismisses *Smithers* because it is not Illinois law. But neither is *Herzog*. Garrett repeatedly states that the common-law rule is that donors cannot bring an action to enforce the terms of a gift agreement but cites no clear Illinois authority for that proposition. Although the *Herzog* court's detailed analysis of the common law regarding donor standing is persuasive, the parties in the instant case have not made it clear that *Herzog*'s reasoning should apply in a case such as this, where the donor alleges that he provided funds to a charitable institution pursuant to a contract, which was later

9

breached. Moreover, as discussed below, Garrett has persuasively argued that Pearson's claims should be dismissed even if Pearson does have standing. Accordingly, Garrett's Motion is denied as to the argument that Pearson lacks standing.

*Count I – Breach of Contract*

Garrett argues that no contract exists between Pearson and Garrett because Pearson provided the funds without any consideration in return and that, even if a contract was formed, Pearson cannot show that the contract was breached or that he suffered any pecuniary harm.

Garrett first argues that Pearson's repeated characterization of his donation as a "gift" conclusively determines that no contract was formed because a gift, by definition, is made without consideration. *See Provena Covenant Med. Ctr. v. Dep't of Rev.*, 925 N.E.2d 1131, 1151 (Ill. 2010). Pearson argues that the conditions in his agreement with Garrett are consideration given in exchange for his donation and that the doctrine of promissory estoppel would operate to create a binding agreement even in the absence of consideration.

It is unnecessary to resolve that issue, however, because even if a contract exists between Pearson and Garrett, the allegations in Pearson's Amended Complaint do not support a claim that the Gift Agreement was breached. Pearson alleges that Garrett has been unable to recruit qualified scholarship recipients, that Pearson has demanded that Garrett transfer the funds to DePauw University, and that Garrett's refusal to honor his demand constitutes a breach of the Gift Agreement. These allegations, accepted as true

and construed in Pearson's favor, do not support a claim that the Gift Agreement was breached.

The Gift Agreement provides four criteria that a student "must" meet to be eligible for a Pearson Scholarship:

> In order to be eligible to receive a Pearson Scholarship, a student must meet the following criteria:
>
> > (i) The student must have demonstrated leadership in activities that commend the student to his or her calling.
> >
> > (ii) The student must demonstrate high academic achievement as indicated by the maintenance of a 3.5 minimum cumulative grade point average, which average must be maintained in order to continue to receive the Pearson Scholarship on an annual renewal basis.
> >
> > (iii) At the time of the initial grant of the Pearson Scholarship and continuing thereafter, the student receiving the scholarship must have evidence of emotional maturity and spiritual readiness to undertake and continue graduate level study in theology.
> >
> > (iv) The student must have a willingness to sign a "good faith" commitment to return to the Seminary over the course of his or her career (through personal gifts and/or raising support from others) an amount equal to what was received in scholarship support while at the Seminary, so that future promising students will also have the opportunity to prepare for ministry at the Seminary.
>
> Gift Agreement ¶ 3(b).

Pearson does not allege that a Pearson Scholarship was awarded to a student who failed to meet these mandatory criteria or that Garrett was unable to find students who meet these criteria. In fact, Pearson alleges that scholarships *were* awarded to students who *did* meet these criteria for the 2007, 2008, and 2010 academic years. *See* Am. Compl. ¶¶ 15, 16, 21.

Pearson instead alleges that Garrett has failed to find students with a present intention to serve in the Iowa Conference of the United Methodist Church. Notwithstanding Pearson's assertions to the contrary, the Gift Agreement plainly provides that *preference* should be given to students who intend to serve in Iowa, not that such an intention is mandatory:

> The Seminary shall give first preference to students who intend to serve in a ministerial capacity in the Iowa Annual Conference of The United Methodist Church and who meet the criteria set forth below. If there are not a sufficient number of students planning to serve in the Iowa Annual Conference of The United Methodist Church who meet the criteria for a Pearson Scholarship, the Seminary may award one or more of the Pearson Scholarships to other students who meet the remaining criteria for a Pearson Scholarship as set forth below.

Gift Agreement ¶ 3(a).

Pearson alleges that the understanding and agreement between Garrett and himself was "memorialized in and evidenced by a series of writings, conversations and conduct by and between the parties, including the initial Gift Agreement dated October 18, 2006," and "subsequent correspondence and other documents stating and confirming the intentions of the parties." Am. Compl. ¶ 10. However, the Gift Agreement contains the following, unambiguous merger clause:

> This Gift Agreement contains the entire understanding of the parties with respect to the subject matter of this Gift Agreement. This Agreement supersedes and cancels all other agreements and understandings, both written and oral, between the parties relating to the subject matter of this Agreement.

Gift Agreement ¶ 11.

Moreover, Pearson's allegations regarding other evidence of his purported agreement do not manifest any mutual intent regarding the agreement between the parties

that is contrary to the Gift Agreement's express terms. For example, Pearson cites a letter he received from Garrett's president in 2009, stating, "As of this moment we have not found a single 3.5 GPA senior who is planning on parish ministry in Iowa, but you can be assured we will turn over every leaf, stone or splinter to locate such a candidate." Am. Compl. ¶ 12. Garrett's stated effort to locate a preferential candidate does not indicate an understanding that an intent to serve in Iowa was a mandatory condition. Pearson also alleges that a quarterly publication issued by Garrett in 2010 stated that the Pearson Scholarship "was created to encourage students to train at Garrett-Evangelical and return as pastors to Iowa." Am. Compl. ¶ 13. Again, this statement is not inconsistent with the express terms of the Gift Agreement.

The primary thrust of Pearson's breach-of-contract claim appears to be based on Garrett's refusal to honor Pearson's demand that the funds be transferred to DePauw University. Again, the Gift Agreement establishes the futility of the claim. The provision regarding the transfer of funds to DePauw University is as follows:

> In the unlikely event that the Seminary does not use the income of the Fund for the purposes specified in this Gift Agreement or that at some future time it becomes impossible or impracticable for the income of the fund to be used for the purposes specified in this Gift Agreement, the Seminary shall immediately direct or take such appropriate action so that the principal and income of the Fund shall be transferred to DePauw University, Greencastle, Indiana, to be used to establish a general scholarship to be known as the Endowed Pearson Scholarship similar to its Endowed Rector Scholarships.

Gift Agreement ¶ 9.

Thus, the Gift Agreement does not provide that Pearson may demand a transfer of the funds that he donated. Rather, Garrett agreed to transfer the funds to DePauw in one

13

of two circumstances: (1) if Garrett does not use the income of the fund as specified in the Gift Agreement or (2) if "at some future time it becomes impossible or impracticable for the income of the fund to be used for the purposes specified in this Gift Agreement." *Id.* As discussed above, Pearson does not sufficiently allege any use of funds that did not comply with the requirements of the Gift Agreement. And with regard to impossibility or impracticability, Pearson expressly alleges that a scholarship was awarded for three out of four years. When all allegations not in conflict with the Gift Agreement are accepted as true, Pearson has not sufficiently alleged that it is impossible or impracticable for Garrett to find recipients who meet the mandatory criteria for the Pearson Scholarship.

Because Pearson does not sufficiently allege any breach of the Gift Agreement, Count I is dismissed for failure to state a claim for relief.

*Counts II and III*

Pearson alleges that Garrett knew before and after executing the Gift Agreement "that its pool of applicants for admission for each year's entering class was too small to permit Garrett to regularly identify and award the Pearson Scholarship on the terms agreed upon between Mr. Pearson and Garrett." Am. Compl. ¶ 28. Pearson also alleges that Garrett knew its recruiting department was "poorly staffed and ineffective" and that Garrett knew that its relationship with the Iowa Conference "was strained and dysfunctional" such that it would be impossible to identify and recruit applicants who would be qualified for the Pearson Scholarship. Am. Compl. ¶ 28. Pearson alleges that Garrett concealed these facts from Pearson in order to induce him to fully fund the Pearson Scholarship. Am. Compl. ¶ 29. Count II purports to state a claim for fraudulent

14

misrepresentation and concealment. Count III purports to state a claim for negligent misrepresentation.

When the district court's subject-matter jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332, the district court applies the substantive law of the forum state as it believes the courts of that state would apply it. *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 876 (7th Cir. 2005). To plead a claim for fraudulent concealment or negligent misrepresentation under Illinois law, a plaintiff must allege a duty on the part of the defendant to inform the plaintiff of any allegedly omitted material fact. *See Lidecker v. Kendall Coll.*, 550 N.E.2d 1121, 1124, 1126 (Ill. App. Ct. 1990) ("In order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak."); *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 843 N.E.2d 327, 334-35 (Ill. 2006) (listing elements of negligent misrepresentation to include "a duty on the party making the statement to communicate accurate information"). Pearson does not allege any such duty owed by a school to a potential donor in an arms-length transaction.

Moreover, the alleged misrepresentation must be one of present or preexisting fact, not an expression of opinion. *See Lagen v. Balcor Co.*, 653 N.E.2d 968, 973 (Ill. App. Ct. 1995). And "[s]tatements regarding future events are considered opinions, not statements of fact." *People ex rel. Peters v. Murphy-Knight*, 618 N.E.2d 459, 463 (Ill. App. Ct. 1993). Pearson's claims regarding the candidates Garrett would be able to attract in the future cannot form the basis for claims of fraudulent or negligent misrepresentation.

15

Additionally, with regard to Count III, Illinois has recognized claims of negligent misrepresentation only in cases involving physical injury, harm to property, or situations in which a person is in the business of supplying information to guide others in their business transactions. *Brogan v. Mitchell Int'l Inc.*, 692 N.E.2d 276, 278 (Ill. 1998). Pearson's claim does not fit into any of these categories.

Counts II and III are dismissed.

*Count IV*

Count IV alleges that Garrett is liable to Pearson for breaching a fiduciary duty. Specifically, Pearson alleges that he entrusted Garrett to administer the funds that he donated "consistent with the understanding of the parties to honor Richard and Ramalee Pearson," that Garrett occupied a position of trust and confidence with regard to Pearson, and that Garrett "failed and refused to administer and use those funds as agreed between Garrett and Mr. Pearson." Am. Compl. ¶¶ 36-38.

To state a claim for breach of fiduciary duty under Illinois law, a plaintiff must allege the following elements: "(1) a fiduciary duty on part of the defendant; (2) a breach of that duty; (3) damages; and (4) a proximate cause between the breach and the damages." *Herlehy v. Bistersky Trust*, 942 N.E.2d 23, 39 (Ill. App. Ct. 2010). Illinois courts recognize a fiduciary duty between parties based on the "special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Chrichton v. Golden Rule Ins. Co.*, 832 N.E.2d 843, 854 (Ill. App. Ct. 2005). "Generally, where parties capable of handling their business affairs deal with each other at arm's length, and there is no evidence that the

alleged fiduciary agreed to exercise its judgment on behalf of the alleged servient party, no fiduciary relationship will be deemed to exist." *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 630 N.E.2d 940, 947 (Ill. App. Ct. 1994).

Here, Pearson simply states a conclusory allegation that he "entrusted" Garrett to administer his donated funds and that Garrett occupied a "position of trust and confidence with regard to Mr. Pearson." Am. Compl. ¶¶ 36-37. These allegations are insufficient to support a claim for breach of fiduciary duty as a matter of law. Pearson simply alleges that Garrett did not perform his end of an arm's-length bargain. Nothing in Pearson's conclusory allegations would support a reasonable inference that Garrett was able to gain "superiority and influence" over Pearson or that he otherwise owed any fiduciary duties to Pearson as a result of Pearson's donation. Count IV is dismissed.

### Count V

Pearson's final claim is for unjust enrichment. Under Illinois law, unjust enrichment is not a separate cause of action; rather, "it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct." *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (quoting *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 648 N.E.2d 971, 977 (Ill. App. Ct. 1995)). Because no other counts remain, a claim for unjust enrichment cannot stand. Count V is dismissed.

As a final note, Garrett asks that all claims be dismissed with prejudice. It is clear from Pearson's Amended Complaint and from the Gift Agreement attached to his

17

Amended Complaint that Pearson will not be able to state a claim for any of the claims he has alleged. The conduct of which he complains does not constitute a breach of the Gift Agreement, the representations made by Garrett are not actionable misrepresentations, and there was no fiduciary relationship between Pearson and Garrett. Accordingly, all claims are dismissed with prejudice.

## CONCLUSION

For the reasons discussed above, Garrett's Motion to Dismiss is granted. All counts in Pearson's Amended Complaint are dismissed with prejudice.

Date: 5-13-11

JOHN W. DARRAH
United States District Court Judge